IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NORTHFIELD INSURANCE CO.,
    Plaintiff

v.                      Civil No. AMD 02-97

GEORGE B. BOXLEY, et al.,
    Defendants

GEORGE B. BOXLEY,
    Plaintiff

v.                      Civil No. AMD 02-285

NORTHFIELD INSURANCE CO.,
    Defendant

...o0o...

MEMORANDUM

These diversity declaratory judgment actions, one of which was filed pursuant to 28 U.S.C. § 2201(a) and one of which was removed from state court, arise under a comprehensive liability insurance policy. The issue presented is whether defendant George B. Boxley ("Boxley") is entitled to a defense from his insurer, Northfield Insurance Company ("Northfield"), in a wrongful death and survivorship action that was filed against Boxley in respect to the fatal shooting of Ronald Davis. The parties agree that Maryland law applies to this case. Cross-motions for summary judgment have been filed and no hearing is needed. For the reasons stated herein, Northfield's motion for summary judgment shall be granted, and Boxley's cross-motion for summary judgment shall be denied.



(i)

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Id.* at 248. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248-49. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). Of course, the facts, as well as the justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The court, however, has an affirmative obligation to prevent factually

unsupported claims and defenses from proceeding to trial. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

When both parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment-- even where . . . both parties have filed cross motions for summary judgment")(emphasis omitted), *cert. denied*, 469 U.S. 1215 (1985).

The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985)(*quoting* Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d § 2720 (2d ed. 1993)). *See also Federal Sav. and Loan Ins. Corp. v. Heidrick*, 774 F. Supp. 352, 356 (D. Md. 1991). "[C]ross-motions for summary judgment do not automatically empower the court to dispense with the determination whether questions of material fact exist." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir.), *cert. denied*, 464 U.S. 805 (1983). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). Both motions may be denied. *See Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

"[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil and Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir. 1967). *See also McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("neither party waives the right to a full trial on the merits by filing its own motion"). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non-existence of a factual dispute." *Shook*, 713 F.2d at 665.

(ii)

Northfield issued a commercial general liability policy to Boxley insuring the business and premises known as Sheriff Road Motel, located at 5500 Sheriff Road, Fairmont Heights, Prince George's County, Maryland. The policy was in effect from November 16, 1999 through November 16, 2000.

The terms of the policy provide:

a.  We will pay those sums that the insured becomes legally obligated to pay because of "bodily injury" . . . to which this insurance applies . . . ."
b.  This insurance applies to "bodily injury" . . . only if:
(1) The "bodily injury" . . . is caused by an "occurrence." . . .

*Insuring Agreement*, 1 (Section I- Coverage A).

"Occurrence," in turn, is defined as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 12 (Section V– Definitions). "Bodily injury" is defined as "bodily injury, sickness or disease sustained by

a person, including death resulting from any of these at any time." *Id.* (Section V–Definitions).

Claims arising out of or related to an assault or battery are expressly excluded from coverage. This exclusion provides as follows:

> This insurance does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or medical expense arising out of an assault or battery or out of any act or omission in connection with the prevention or suppression or an assault or battery; whether caused by or at the instigation or direction of the insured, and "employee" or patron of the insured, or any other person.

*Endorsement*, Exclusion – Assault or Battery.

On March 19, 2002, Ronald Davis was at the Sheriff Road Motel. At around 2:00 p.m., Davis and another man exited the front door of the motel. *Lyn Banks Aff.*, ¶ 3. The two men were heard arguing with each other in loud voices. *Id.* As Davis crossed the street and began to open the trunk of an automobile, the other man produced a gun and "pointed the gun at the street and fired shots that appeared . . . to be aimed into the street." *Id.* Davis sustained a fatal gunshot wound. The autopsy report stated that the decedent died of a gunshot wound to the left side of the back of the chest. The report concluded that the bullet struck an "intermediate target" before striking the deceased.

Subsequently, Juno Davis, Davis's widow, brought wrongful death and survival actions against Boxley in the Circuit Court for Prince George's County ("the underlying action"). The complaint in the underlying action contains the following allegations:

> 3) On March 19, 2000, Ronald Davis entered the premise[s] known as Sheriff Road Motel . . .

> 4)  While on the premises of the Sheriff Road Motel, Ronald Davis became involved in an altercation with an individual who was employed by and/or in the supervision of the defendant [Boxley].
> 5)  During the entire time that Ronald Davis was on the premise[s] of the Sheriff Road Motel, he was not armed with any type of weapon.
> 6)  As Ronald Davis left the premises of the Sheriff Road Motel, he was followed by an employee and/or person under the supervision of the [Boxley]. The agent of [Boxley] shot and killed Ronald Davis in the street near Sheriff Road Motel.

The complaint contains these further allegations by Boxley, referred to as "Defendant":

> 13) Defendant breached his duty . . . by allowing employees and/or agents to maintain weapons in the premises.
> 14) Defendant breached his duty by failing to adequately monitor and supervise the activities of the Sheriff Road Motel, and failing to provide for the safety of Ronald Davis . . . and further breached his duty by failing to adequately investigate the background of the individual who shot and killed Ronald Davis.
> 15) The breaches of duty by the defendant proximately caused the death of Ronald Davis.

(iii)

It is well established in Maryland that insurance policies are construed like other contracts. *Little v. First Federated Life Ins. Co.*, 296 A.2d 362, 375 (Md. 1972) (citation omitted). As with other contracts, the words of an insurance policy are to be given their ordinary meaning. *C&H Plumbing and Heating, Inc. v. Employers Mut. Cas. Co.*, 287 A.2d 238, 239 (Md. 1978) (citations omitted). "[W]hen deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." *Bausch & Lomb v. Utica Mutual*, 625 A.2d 1021, 1031 (Md. 1993) (citations omitted). Maryland does not follow the rule, adopted by other jurisdictions, that an insurance policy is to be construed most strongly against the insurer. *Cheney v. Bell Nat'l Life Ins. Co.*,

556 A.2d 1135, 1138 (Md.1989).

The obligation of an insurer to defend its insured is determined by the allegations made in the action against the insured. *First Financial Ins. Co. v. GLM, Inc.*, 88 F.Supp.2d 425, 428 (D.Md. 2000) (citing *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842 (Md. 1975)). The insurer has an affirmative obligation to defend when there exists a "potentiality that the claim could be covered under the policy." *First Financial*, 88 F.Supp.2d at 428 (quoting *Litz v. State Farm Fire and Cas. Co.*, 695 A.2d 566 (Md. 1997)). Accordingly, the allegations in the complaint must be construed broadly, "encompassing not only the four corners of the complaint, but also any extrinsic evidence allowing the insured to establish the potentiality of the coverage." *First Financial*, 88 F.Supp.2d at 428 (citing *Aetna Casualty & Surety Co. v. Cochran*, 651 A.2d 859 (Md. 1995); *Litz*, 695 A.2d at 569).

It is more than clear that the resort to "declaratory judgments in advance of tort trials to resolve issues presented in pending tort cases should be rare." *7416 Baltimore Ave. Corp. v. Penn-America Ins. Co.*, 577 A.2d 398 (Md.Ct.Spec.App. 1990) (citing *Allstate Ins. Co. v. Atwood*, 572 A.2d 154 (Md. 1990) (citations omitted). Where, however, the allegations of the complaint are doubtlessly beyond the parameters of the insurance contract and "as a matter of law" are excluded from the policy, a "pretrial declaratory judgment should be rendered." *First Financial*, 88 F.Supp.2d at 429 (quoting *Atwood*, 572 A.2d 154).

(iv)

As an initial matter, Boxley asserts that the exclusion provision of his policy is not applicable to the underlying action because the wrongful death complaint states a claim for

negligence. *Def.'s Op. to Pl.'s Mot. for Sum. J.*, 12. Boxley cites no authority and makes no argument in support of this bald assertion, however. Moreover, Boxley utterly fails to acknowledge the relevant case law on this issue that compels a contrary conclusion.

In *First Financial, supra,* a similar exclusionary provision was applied to bar coverage for claims for negligence asserted by a patron against a night club after a stabbing incident. There, the policy excluded coverage "in actions for damages against [the insured] for '[b]odily injury . . . [a]rising out of an assault or battery, or an act or omission in connection with the prevention or suppression of an assault or battery.'" *First Financial*, 88 F.Supp.2d at 427. The underlying complaint in *First Financial* alleged that the nightclub was negligent in failing to provide sufficient security, as well as negligent in hiring its doorman. The court explained that such claims qualified as a claim against the nightclub arising out of the nightclub's "omission in connection with the prevention . . . of an assault or battery." *Id.* at 429-30 (citations omitted). Thus, the claims were excluded from coverage.

Similarly here, it is clear that the claims in the underlying complaint unquestionably arose out of Boxley's alleged "omission in connection with the prevention or suppression of an assault or battery; whether caused by or at the instigation or direction of the insured, and 'employee' or patron of the insured, or any other person. omission in connection with the prevention of an assault or battery." *Endorsement*, Exclusion – Assault or Battery. Boxley does not and cannot argue otherwise.

Not surprisingly, Boxley fails to address this case law. Instead, Boxley cites two cases that are inapposite. Neither case addresses an exclusion provision remotely similar to

the one in the case at bar. First, Boxley relies on *Utica Mutual Ins. Co. v. Miller*, 746 A.2d 935 (Md.Ct.Spec.Ap. 2000). In *Miller*, the appellant, Utica Mutual, maintained that the trial court erred in determining that it had a duty to defend the appellee, Miller, because the "money received" exclusion in its errors and omissions policy barred coverage. The "money received" exclusion stated that insurance would not be provided for a claim arising out of: any liability for money received by an insured or credited to an insured for fees, premiums, taxes, commissions, loss payments, or escrow or brokerage monies. *Id.* at 940. In considering this issue, the Maryland Court of Special Appeals explained that in determining whether coverage potentially existed, it must compare the insurance policy to the allegations set forth in the underlying action. *Miller*, 746 A.2d at 940. The court stated that the "gravamen" of the underlying complaint was that the insured broker (Miller) failed to remit $326,480.12 in premiums collected on behalf of an insurer. *Miller*, 746 A.2d at 940. The court determined that, if the only cause of action asserted in the underlying complaint was "based on [Miller's] failure to remit premiums collected, [the court] would hold that [Utica Mutual] had no duty to defend under the monies received exclusion." *Miller*, 746 A.2d at 942. As the underlying complaint in Miller contained other claims that did not fall under the express provisions of the money-received exclusion, Utica Mutual therefore had a duty to defend on those other claims. Boxley fails to provide any argument as to how this holding applies to the case at bar.

Boxley's reliance on *Bell & Assoc, Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d.Cir. 1996), is similarly misplaced. Coverage under that policy was subject to exclusions

including, among others, claims arising out of both the commingling of monies or accounts and the insolvency of any insurance company from which Bell had obtained insurance coverage on behalf of a client. Boxley makes no argument as to why this case is applicable to the case at bar. Accordingly, I shall not further consider it.

(v)

More substantively, Boxley argues that Northfield has a duty to provide a defense in the underlying action because the wrongful death and survivorship claims may potentially come within the policy coverage. Boxley maintains that a fact finder could conclude that the shooter did not commit a battery when he shot and killed Davis. The task at hand, therefore, is to determine whether, in considering the essential elements of a tort claim for battery, there is any dispute over material facts from which a jury could conclude that the shooter did not commit a battery when he shot and killed Davis.

A battery is a harmful or offensive contact with a person resulting from an act intended to cause the person such contact. *Saba v. Darling*, 575 A.2d 1240, 1242 (Md. 1990) (citing RESTATEMENT (SECOND) OF TORTS, § 13). The act in question must be some positive or affirmative action on the part of the defendant. *Id.* (citing Prosser & Keeton, The Law of Torts, § 9 (5th ed.1984)). A battery may occur through a defendant's direct or indirect contact with the plaintiff. *Nelson v. Carroll*, 735 A.2d 1096, 1100 (Md. 1999). Therefore, indirect contact, such as when a bullet strikes a victim, may constitute a battery. *See id.* at 1101 ("[I]t is enough that the defendant sets a force in motion which ultimately produces the result . . . ."(citing Prosser & Keeton, The Law of Torts § 9, at 40 (5th ed.1984))).

-10-

It is universally accepted that some form of intent is required for battery. *Nelson*, 735 A.2d at 1100 (citing RESTATEMENT (SECOND) OF TORTS § 13 (1965) ("An actor is subject to liability to another for battery if ... he acts intending to cause a harmful or offensive contact ...."); Prosser & Keeton, The Law of Torts § 9, at 39 (5th ed. 1984) (noting that battery requires "an act intended to cause the plaintiff ... to suffer such a contact ...."); Harper, James & Gray, The Law of Torts § 3.3, at 3:9 (3d ed. 1996) ("[T]o constitute a battery, the actor must have intended to bring about a harmful or offensive contact or to put the other party in apprehension thereof.")).

The requisite intent, however, is not a specific intent to cause the type of harm that occurred:

> The defendant's liability for the resulting harm extends, as in most other cases of intentional torts, to consequences which the defendant did not intend, and could not reasonably have foreseen, upon the obvious basis that it is better for unexpected losses to fall upon the intentional wrongdoer than upon the innocent victim.

*Nelson*, 735 A.2d at 1100 (citing Prosser & Keeton, The Law of Torts § 9, at 40 (5th ed.1984)). Consequently, a purely accidental touching is not sufficient to establish the intent requirement for battery. *Nelson*, 735 A.2d at 1100 (citation omitted).

Typically, intent is a highly fact-bound element usually left for the jury's determination. There are circumstances, though, under which the intent element of an intentional tort or a crime will be implied. *Id.*; *see, e.g., Norman v. Insurance Co. of N. America*, 239 S.E.2d 902, 903 (Va. 1978) (holding that the trial court did not err when it directed the jury that the "inflict[ion of] a gunshot wound upon the plaintiff ... constitutes

an ... assault and battery upon him despite shooter's stance that the shooting was accidental where the shooter "fired his pistol at the floor without removing it from his pocket and without aiming it at anyone; and that the bullet . . . ricocheted from the floor and hit [the victim]"). In *Nelson*, for example, the shooter entered a nightclub with a loaded firearm in his jacket and demanded the repayment of a loan. The shooter used his gun to strike plaintiff on the head, but as he did so the gun discharged and hit plaintiff. The shooter asserted the defense of accident, claiming that he did not intend to fire the weapon. The *Nelson* court rejected the defense, and drew the one reasonable inference that could be drawn from the circumstances-- that the shooter's actions evidenced an intent to commit a battery. *Id.* at 1102.

Here, Boxley argues that the requisite intent has not been established. Boxley fails, however, to distinguish *Nelson* from the case at bar. Instead, Boxley contends that "uncontested evidence" supports a contrary conclusion. Boxley relies on three facts that he believes could lead a fact finder to conclude that Davis's shooting was accidental.[1] First, Boxley argues that because the shooter apparently did not aim the gun at Boxley and fired it into the street, a fact finder could conclude that the shooter did not possess the requisite intent. Next, Boxley relies on the fact that Davis was opening the trunk of his car and was

---

[1] I note that Boxley misstates the requisite intent to establish a battery. For instance, on page 6 of his memorandum, Boxley argues facts that "could lead a fact finder to conclude that the *death of Ronald Davis was accidental.*" The question is not whether the death was accidental; the question before me is whether the record compels the conclusion that the contact resulting in Davis's death was, as a matter of law, an assault and/or battery, and therefore excluded from coverage. As discussed in text, it clearly was.

not facing the direction of the shooter. Finally, Boxley credits the fact that the bullet struck an intermediate object first, then hit Davis. It is entirely unclear how these circumstances dispel any inference of the shooter's intent.

There is no dispute that at the time Davis and the shooter left the motel, they were arguing loudly. As Davis crossed the street and approached the trunk of a car, the man with whom he had just been arguing produced a gun and fired it several times. Boxley has failed to proffer any theory to explain the shooter's actions. Whether the shooter intended to kill or seriously injury Davis is of no moment.

Indeed, whether the shooter even intended to hit Davis is of no legal consequence. As explained in *Nelson*, the Court of Appeals of Maryland has reiterated the rule that if one commits an assault, and in the course of committing the assault that person comes into contact with the person assaulted, the intent element of battery may be supplied by the intent element of the assault. *Nelson*, 735 A2.d at 1102. Accordingly,

> one who intends to frighten another by assaulting him or her, and touches this person in a harmful or offensive manner and claims the touching was inadvertent or accidental, is liable for battery, notwithstanding the contention that the actual touching was never intended.

*Id.* Accordingly, the Court of Appeals explained that

> under some circumstances, the facts may be such that an intent to cause another's apprehension of immediate physical harm (*i.e.*, an assault) is the only reasonable inference that may be drawn and a defendant would be precluded as a matter of law from presenting a defense of not intending to commit an assault.

*Id.* at 1102-3; *see also* RESTATEMENT (SECOND) OF TORTS § 13 (1965) ("An actor is subject

to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, *or an imminent apprehension of such a contact . . . .*") (emphasis added). Therefore, one who intends to frighten another by assaulting him or her, and touches this person in a harmful or offensive manner and claims the touching was inadvertent or accidental, is liable for battery, notwithstanding the contention that the actual touching was never intended.

Boxley fails to address this argument and would be hard-pressed to do so. In this case, as in *Nelson*, the perpetrator was carrying a loaded gun, which he brandished and then discharged numerous multiple times. All of this occurred in connection with a loud argument with Davis. If the shooter did not intend to harm Davis, the only other reasonable conclusion which can be drawn from this set of tragic circumstances is that the perpetrator intended to cause Davis an imminent apprehension of such harm. Indeed, Boxley recognizes that there is simply no other plausible explanation, as he does not proffer any other theory, stating only that the shooter intended not to shoot Davis "but to warn him." *Letter from Boxley's Counsel to Northfield,* attached as *Boxley's Op.*, Ex. 7.

(vi)

For the foregoing reasons, judgment shall be entered in favor of plaintiff.

Filed: August 15, 2002

_____
ANDRE M. DAVIS
United States District Judge

-14-